UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Wesley WILLIAMS,<br><br>                              Plaintiff,<br><br>v.<br><br>B. BELTRAN, et al.,<br><br>                              Defendants. | Case No.: 22-cv-1667-AGS-MMP<br><br>**ORDER GRANTING MOTION TO SEVER (ECF 15), DISMISSING COUNT 1 WITHOUT PREJUDICE, AND TERMINATING DEFENDANTS BAILIS AND BOWEN** |

Defendant prison doctors claim that the inmate plaintiff here has inappropriately joined two separate medical events into a single lawsuit. For his part, plaintiff argues that both his claims arise from the same mental-illness problems and treatment. Because his claims are insufficiently related to justify joining them into a single lawsuit, defendants' motion must be granted.

## BACKGROUND

In his amended complaint, plaintiff John Williams claims a history of mental illness and self-harm. He brings two counts against two separate sets of defendants.[1]

In Count 1, Williams alleges he was "admitted" to "a mental health crisis bed" in February 2022 "due to danger to [him]self and plan to hang [himself] in suicide." (ECF 9, at 3.) A few days later, his "primary clinician" "Dr. Moreno" went on vacation. (*Id.* at 3.) Meanwhile two other doctors—defendants Bailis and Bowen—were "bombard[ed] by emails from non-mental[-]health prison officials" who apparently wanted to transfer Williams to another facility "for a court hearing." (*Id.* at 3–4.) After they spoke to Williams, and after Williams informed them he was still harboring thoughts of self-harm, "Bailis and Bowen then discharged plaintiff." (*Id.* at 4.) Williams thereafter self-harmed with "hard plastic from a CPAP machine." (*Id.*)

---

[1] The amended complaint lists three claims, but the third was dismissed at screening. (*See* ECF 22.) So, defendants' request to sever that claim is moot.

1

  Count 2 begins eight months later in October 2022. Williams warned another doctor—defendant Beltran—of "thoughts of suicide and self[-]harm." (*See id.* at 6.) Beltran "ignored" those warnings. (*Id.*) And over the next two days, Williams "engaged in self[-]harm" and "mutilation." (*Id.*) Williams was admitted to a "crisis bed" and again assigned "Dr. Moreno" as his "primary clinician." (*Id.* at 7.) This time, though, Moreno did not go on vacation. Instead, Moreno allegedly told Williams that although unqualified to make a formal diagnosis, he believed Williams might have a "personality disorder." (*Id.*) Williams contends Moreno shared this "unconfirmed theory" with Beltran and yet another doctor, defendant Boyd. The three doctors—Beltran, Boyd, and Moreno—then "coordinate[d]" to "structure a mental health treatment plan around the suspected diagnosis," and as a result Williams was discharged while "still suffering from thoughts of suicide[] . . . and self[-]harm." (*Id.*) After the discharge, Williams warned Beltran "of continuing intense dreams and thoughts of suicide and self[-]harm," but Beltran "ordered subordinates to ignore" Williams. (*Id.* at 8.)

  Three days after the discharge, Williams claims he cut his "left arm above the wrist more severe[ly] than previously," and "walk[ed] around the . . . facility actively bleeding for over an hour" before other officers "observed [him] semi[-]conscious, fatigue[d] from blood loss, and disoriented." (*Id.*) Nevertheless, Williams alleges Beltran "yet again" ordered his subordinates to "ignore Plaintiff's report of ongoing intense dreams," "thoughts of suicide," and "act of self[-]harm," and cleared Williams to return to his cell. (*Id.* at 9.)

  Both counts claim that defendants unconstitutionally subjected him to cruel and unusual punishment by being deliberately indifferent to his medical needs. (*See generally id.*) Defendants move to sever the counts, arguing that they were discrete events that occurred months apart and involved different defendants. (*See* ECF 15.)

## DISCUSSION

  Generally, "[u]nrelated claims against different defendants belong in different suits." *Jones v. Placer Cty. Sheriff's Off.*, No. 219CV0342MCEEFBP, 2020 WL 1472426, at *2

(E.D. Cal. Mar. 26, 2020). Williams argues that two federal rules of civil procedure potentially permit joinder in this case: Rules 18 and 20.

Rule 18 allows a plaintiff to "join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). So, "multiple claims against a single party are fine." *See Jones*, 2020 WL 1472426, at *2. But here, each count has multiple defendants who do not overlap. The only defendant *mentioned* in both counts is Dr. Moreno, but he had nothing to do with the alleged unconstitutional medical care in Count 1. The amended complaint specifically alleges that Moreno was on "vacation[]" at the time Drs. Bailis and Bowen ignored Williams's threats of self-harm and discharged him. (*See* ECF 9, at 3–4.) As Moreno was uninvolved in the deprivation of rights described in Count 1, Rule 18 is inapplicable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

That leaves Rule 20, which permits a plaintiff to join claims against different defendants so long as they (1) "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences" and (2) have at least one "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2)(A)–(B). "The 'same transaction' requirement refers to the similarity in the factual background of the claim." *Mills v. Clarke*, No. 120CV00498HBKPC, 2023 WL 3063287, at *3 (E.D. Cal. Apr. 24, 2023), *report and recommendation adopted*, 2023 WL 3466360 (E.D. Cal. May 15, 2023). Courts find that claims arise from the same transaction when "they are based on the same precipitating event, or a series of related events caused by the same precipitating event." *Id.*

To make the "same transaction" showing, Williams relies on the fact that both counts have to do with his "mental health," his "self[-]injurious behavior," and the "defendant[s'] response or, lack thereof, thereto." (ECF 16, at 3–4.) Some of those may qualify as questions of "fact common to all defendants"—the second requirement under Rule 20— but they don't suggest that both counts were "based on the same precipitating event." *Mills*, 2023 WL 3063287, at *3. Instead, the deprivations here are based on two "entirely different

set[s] of defendants" making medical decisions eight months apart with no predicate event connecting them and no other "similarity of factual background that would warrant joining them in a single action." *See id.* at *6.

Thus, Counts 1 and 2 are misjoined. Defendants request that this Court dismiss Count 1 without prejudice, while maintaining Count 2 in this action. (*See* ECF 18, at 1.) The Court agrees. Count 2 involves the more serious allegations and appears to be the crux of Williams's claims, so he may continue to prosecute Count 2 in this suit.

## CONCLUSION

Accordingly, defendants' motion to sever is **GRANTED**. Count 1 is severed and dismissed without prejudice, but Williams may refile it as a separate lawsuit. All claims against defendants Bailis and Bowen are dismissed, and the Clerk will terminate them on the docket. By **February 16, 2024**, the remaining defendants must file their responsive pleading to Count 1.

Dated:  January 25, 2024

_____
Hon. Andrew G. Schopler
United States District Judge