1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  JOHN WESLEY WILLIAMS, | Case No.:  22-cv-1667-AGS-MMP |
| 12                        Plaintiff, | **REPORT AND** |
| 13  v. | **RECOMMENDATION RE:** |
| 14  BELTRAN, et al., | |
| 15                        Defendants. | **1. PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT; AND** |
| 16 | |
| 17 | |
| 18 | **2. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| 19 | |
| 20 | [ECF Nos. 30, 43] |
| 21 | |

22          This Report and Recommendation is submitted to United States District Judge

23   Andrew G. Schopler pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3

24   of the United States District Court for the Southern District of California. Pending before

25   the Court is Plaintiff John Wesley Williams's ("Plaintiff") Motion for Leave to File a

26   Second Amended Complaint. [ECF No. 30.] The Court found the motion suitable for

27   determination on the papers and without oral argument pursuant to Civil Local Rule

28   7.1(d)(1). [ECF No. 31.] While Plaintiff's motion was under submission, Defendants filed

a motion for summary judgment asserting Plaintiff failed to exhaust his administrative remedies. [ECF No. 43.] For the reasons set forth below, the Court **RECOMMENDS** the District Judge **GRANT-IN-PART and DENY-IN-PART** Plaintiff's Motion for Leave to File a Second Amended Complaint and **DENY without prejudice** Defendants' Motion for Summary Judgment.

## I.    RELEVANT BACKGROUND

### A.    Procedural History

On October 25, 2022, Plaintiff filed a civil rights action under 42 U.S.C. § 1983. [ECF No. 1.] On April 27, 2023, the Court granted Plaintiff leave to proceed in forma pauperis, screened his original Complaint, dismissed all claims alleged against Defendants Daub and Edwards, and directed the U.S. Marshals to serve Defendants Bailis, Beltran, Bowen, Boyd,[1] and Moreno. [ECF No. 6.]

On May 18, 2023, Plaintiff filed a First Amended Complaint ("FAC") in which he added Defendant Serrano. [ECF No. 9.] On July 3, 2023, Defendants Bailis, Beltran, Bowen, Boyd, and Moreno moved to sever the defendants and claims from the FAC. [ECF No. 15.]

On January 24, 2024, the Court screened Plaintiff's FAC and dismissed all claims alleged against Defendant Serrano. [ECF No. 22.] The Court then granted Defendants' motion to sever and dismissed Count 1 and all claims alleged against Defendants Bailis and Bowen in the FAC. [ECF No. 23.] On February 9, 2024, Defendants Beltran, Boyd, and Moreno, the only remaining defendants, answered the FAC. [ECF No. 25.]

On April 10, 2024, Plaintiff moved for leave to file a Second Amended Complaint, along with his proposed Second Amended Complaint ("SAC"). [ECF Nos. 30, 30-1.] Defendants opposed the motion, and Plaintiff filed a reply brief. [ECF Nos. 32, 36.]

---

[1] Plaintiff refers to Defendant Boyd in his pleadings, whereas Defendants refer to Defendant Boyd-Bowman. For ease of reference, the Court uses the former.

On May 9, 2024, the Court entered a Scheduling Order, setting a deadline of June 7, 2024 for a motion to amend the pleadings or adding parties. [ECF No. 34.] Plaintiff subsequently sought to stay discovery until the Court ruled on his pending motion, which the Court denied. [ECF Nos. 39, 42.]

On August 26, 2024, Defendants Beltran, Boyd, and Moreno filed a motion for summary judgment on the grounds Plaintiff failed to exhaust administrative remedies before filing his FAC as required by the Prison Litigation Reform Act (PLRA). [ECF No. 43.] In response, Plaintiff filed a motion requesting leave to be excused from opposing the pending summary judgment motion, asserting the motion is "futile and moot" in light of Plaintiff's pending SAC. [ECF No. 44.]

## B.   Factual Allegation in Plaintiff's SAC

In his proposed SAC, Plaintiff again claims a history of mental illness and self-harm. [ECF No. 30-1.] He brings three counts against three separate sets of defendants: Count 1 contains both new and old allegations from his FAC, Count 2 is primarily the same as Count 2 from his FAC in which he was permitted to continue prosecuting in the Order Granting Motion to Sever, ECF No. 23, and Count 3 contains new allegations. Overall, the SAC brings claims against five new defendants—the California Department of Corrections and Rehabilitation ("CDCR") and individual defendants Gates, Barletto, Huss, and Sanchez. [ECF No. 30-1.] Like Plaintiff's current claim in the FAC, Counts 1 and 3 also assert "deliberate indifference to serious psychiatric medical care due to discrimination." [ECF No. 30-1.] The Court summarizes Plaintiff's allegations as to each Count below.

### 1.   Count 1

In Count 1, Plaintiff alleges new events as well as a reiteration of events alleged in Count 2 of the FAC. [*Id.*] The new events start with a diagnosis dating back to August 2014. [ECF No. 30-1 ¶ 4.] Plaintiff alleges he was "diagnosed with Exhibitionism" in August 2014, where his "exhibitionist urges were identified as a substitute for self-mutilation." [*Id.*] Plaintiff alleges Defendant Gates, as Chief, and Defendant CDCR only allowed prison employee subordinates to prescribe medications for treatment of Post-

Traumatic Stress Disorder (PTSD) but "do not allow or provide actual treatment outside of medications." [*Id.*] On December 16, 2014, Plaintiff filed a grievance log #LAC-HC-14049253 "to enforce a recommendation made by a mental health Interdisciplinary Treatment Team (IDTT) for transfer to DSH for Exhibitionist treatment." [*Id.* ¶ 6.] However, his referral was denied.

Plaintiff alleges he was diagnosed with PTSD by a California State Prison Corcoran psychiatrist sometime between 2020 and 2021, and mental health treatments for PTSD and Exhibitionism are known as "specialty treatments" and "only offered at Department State Hospitals (DSH) outside of CDCR." [*Id.* ¶¶ 2, 5.]

From 2014 through 2024, Plaintiff manifested "ongoing, uncontrollable behavior" where his self-mutilation turned from suicide attempts "to self-mutilation for pleasure and to regulate emotions." [*Id.* ¶ 7.] Between May and September 2022, Plaintiff was "admitted into California Medical Facility (CMF) Psychiatric Inpatient Program (PIP) due to a series of self-mutilation incidents" at Richard J. Donovan Correctional Facility ("RJD"). [*Id.* ¶ 8.] Plaintiff was discharged around October 2022 and was subsequently recommended for PTSD treatment at "RJD Enhanced Out-Patient (EOP) level of care" under Defendant Beltran's supervision. [*Id.*] As alleged in Count 2 of the FAC, Plaintiff returned to RJD EOP and told Beltran, the Senior Psychologist Supervisor, about "childhood trauma and triggers" for self-harm and advocated for PTSD treatment. [*Id.* ¶ 9.] Beltran responded with "I will look into it." [*Id.*] On October 7, 2022, Plaintiff's PTSD influenced him to "self-mutilate" while in a trigger setting he previously described to Beltran. [*Id.* ¶ 10] Beltran approved Plaintiff's return to his cell following the incident, even though Plaintiff was still "suffering PTSD trauma related symptoms with unrestricted access to sharp objects to self harm." [*Id.*]

1      2.    Count 2[2]

The events in Count 2 follow the events from Count 1. According to Plaintiff, Defendant Beltran's action described in Count 1 led to his admission to RJD's "Mental Health Crisis Bed (MHCB)" for suicide prevention from October 9 to October 17, 2022, due to suicidal trends and self-mutilation. [*Id.* ¶ 11.] Plaintiff reported continued suicidal thoughts and self-harm to Defendant Moreno, his assigned Primary Clinician, while at RJD MHCB, and Defendant Moreno said, "while I'm not qualified to diagnos[e], I believe you are suffering from a personality disorder." [*Id.* ¶ 12.] Defendant Moreno gave Plaintiff printed research materials and tried to "convince" Plaintiff to agree with his personality disorder "theory." [*Id.*] Defendant Moreno shared the theory with Defendants Boyd and Beltran to create a treatment plan for the "unconfirmed" personality disorder. [*Id.* ¶ 13.] Plaintiff says this was done to "avoid referral for specialty treatment." [*Id.* ¶ 12.] Plaintiff was then prematurely discharged from the MHCB "while still suffering" from PTSD as well as suicidal and self-harm thoughts. [*Id.* ¶ 13.] Following his discharge from the MHCB, on October 20, 2022, Plaintiff used his "unrestricted access to sharp objects" to cut his "left arm above the wrist," and he was allowed to walk around the prison "actively bleeding profoundly for over an hour." [*Id.* ¶ 14.] Unidentified officers discovered him "semi-unconscious, fatigued from blood loss, and disoriented," and they "handcuffed and secured" him in a holding cage in the psychiatric service unit until Beltran was notified. [*Id.* ¶¶ 14, 15] Plaintiff further alleges Beltran ordered his subordinates to "ignore" Plaintiff's "report of ongoing intense dreams of suicide and acts of self harm" and cleared him to return to his cell where he had "unrestricted access to sharp objects." [*Id.* ¶ 15.] [3]

_____

[2] Plaintiff's allegations throughout Count 2 of the SAC are essentially the same as his allegations from Count 2 in his FAC. [ECF No. 30-1.] The Court previously found these allegations were sufficient to survive screening. [ECF Nos. 6, 22.]

[3] Plaintiff also includes a single conclusory sentence alleging non-African American prisoners at Richard J. Donovan Correctional Facility are treated differently when they

### 3.   Count 3

Count 3 includes new allegations against Defendant Beltran, as well as newly added Defendants CDCR, Sanchez, Huss, and Barletto. Plaintiff claims he engaged "in a dozen or more" self-harm incidents from October 20, 2022 through May 2023. [*Id.* ¶ 17.] After becoming aware of Plaintiff's self-harm incidents, Defendant Beltran would clear Plaintiff to return to his cell which still contained sharp objects, and/or instruct his subordinates to "defy" CDCR's Suicide Prevention and Response procedures." [*Id.*]

On April 8, 2023, Plaintiff told Defendant Sanchez, a psychiatric technician, he wanted to harm himself, to which Sanchez laughed and said, "unless you say the magic word[,] I can't help you." [*Id.* ¶ 18.] Plaintiff then returned to his cell quarters and self-mutilated. [*Id.*] Between April 8, 2023 and May 23, 2023, Plaintiff alleges he reported "more than a few self-inflicted lacerations" to Defendants Beltran and Sanchez, which Sanchez responded by providing "gauzes, non-adherent pads, and other medical supplies" and telling Plaintiff to "treat [his] own wounds in [his] cell." [*Id.* ¶ 19.]

In May 2023, Dr. Thompson, psychologist intern supervised by Defendant Beltran, recommended Plaintiff be transferred from RJD due to his mental health and inclination to self-harm. [*Id.* ¶ 21.] Beltran refused and prevented Dr. Thompson from presenting his recommendation to the IDTT. [*Id.*]

On June 10, 2023, Beltran was informed Plaintiff cut his right arm but still cleared Plaintiff to return to his cell without removing the object Plaintiff used to inflict the gash. [*Id.* ¶ 20.] Between September 21, 2023, and February 6, 2024, Plaintiff was held in MHCB and then referred to CMF PIP with no incidents of self-harm for four consecutive months. [*Id.* ¶ 22.] Plaintiff returned to RJD with a discharge recommendation to participate in

---

display or suffer PTSD trauma-related symptoms or engage in repeated acts of self-mutilation. [ECF No. 30-1 ¶ 16.] The Court notes there are no other allegations involving race, or mention of race, throughout the SAC; nor are there any allegations involving treatment of other prisoners that display or suffer PTSD trauma-related symptoms.

PTSD treatment and groups, but CDCR ignored the recommendation. [*Id.* ¶ 23.] From February 6, 2024, to February 28, 2024, Beltran had a "personal protégé" act as Plaintiff's primary clinician on record, while Beltran directed Plaintiff's "actual" treatment. [*Id.* ¶ 24.] At Plaintiff's IDTT session on February 12, 2024, Beltran continued a treatment plan based on the personality disorder theory and continued to disregard the recommendation from CMF PIP. [*Id.*]

On March 2, 2024, Plaintiff "self mutilated at the left arm" and had "the urge to continue to self harm" based on distress over "drug infested living conditions." [*Id.* ¶ 25.] While Plaintiff was in "TTA-medical under wound care," Defendant Huss, a Correctional Lieutenant, told Plaintiff, "I'm issuing you a Restrictive Housing Unit (RHU) Administrative Segregation (Ad-Seg) lock up order" where Plaintiff would remain overnight but would be cleared the following morning. [*Id.*]

The next morning, Defendant Barletto, a psychologist, asked Plaintiff how he was feeling, and Plaintiff stated he still had urges to cut himself. [*Id.* ¶ 26.] Defendant Barletto informed Plaintiff "they are coming to take you back." [*Id.*] Plaintiff remained in the RSH Ad-Seg overnight, and Defendant Barletto returned the next morning. [*Id.*] Plaintiff reiterated he "still [had] thoughts and urge to cut." [*Id.*] Barletto then responded, "well, I can't hold your hand or put you in a rubber room" and then left. [*Id.*] Plaintiff was later taken back to his cell where there were sharp objects. [*Id.*] Plaintiff alleges he engaged in PTSD-triggered self-harm on four separate dates in March 2024, and in each incident, Defendant Beltran determined that Plaintiff be cleared for return to his cell despite access to sharp objects to facilitate self-harm. [*Id.* ¶ 27.]

## II.    MOTION TO FILE SECOND AMENDED COMPLAINT

Plaintiff contends his proposed SAC complies with the Court's previous orders—in particular, he seeks to assert three separate counts that comply with Federal Rules of Civil

Procedure[4] 8, 18, and 20, as the claims are multiple claims against a single party or a series of transactions and occurrences based on factual background.[5] Defendants oppose the motion on two grounds. [ECF No. 32.] First, Defendants assert the Court should deny leave to amend as to Count 1 against Defendant Gates related to events in 2014 because of Plaintiff's "egregious and unexplained delay" in seeking to add the claim. [*Id*. at 3.] Second, Defendants contend the proposed SAC once again fails to comply with Rules 18 and 20, as it alleges unrelated claims against different Defendants involving different operative facts. [*Id*. at 3–4.]

### A.   Legal Standard

Rule 15 governs amendment to pleadings. A party is allowed to "amend its pleading once as a matter of course" under Rule 15(a)(1). Rule 15 allows subsequent amendments to pleadings "only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) ("In general, a court should liberally allow a party to amend its pleading."). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *see also DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987). Prejudice to the opposing party is the most important factor. *Eminence Cap., LLC*

---

[4] All further references to "Rule" are to the Federal Rules of Civil Procedure unless otherwise expressly noted.

[5] Plaintiff also contends each claim plausibly demonstrates ongoing violations that hold Plaintiff under imminent danger. The cases Plaintiff cites, however, involve the imminent danger exception to in forma pauperis. [ECF No. 30 at 2–3.] The Court already found Plaintiff's "allegations sufficient, when considered as a 'threshold procedural question,' to plausibly suggest Williams faced 'ongoing danger' of physical injury at the time of filing." [ECF No. 6 at 3.]

*v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).[6] The Ninth Circuit has recognized the "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

### B.   Analysis

While Defendants acknowledge the liberal standard for leave to amend a complaint under Rule 15, they maintain Plaintiff should be denied leave to amend based on undue delay and futility of amendment under Rules 18 and 20. [ECF No. 32 at 3.] The Court addresses Defendants' arguments in turn.

#### 1.   Undue Delay

The Ninth Circuit has recognized delay, though not dispositive, is relevant to the amendment analysis, "especially when no reason is given for the delay." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *see McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988) ("'[U]ndue delay' is one valid reason for a district court to deny a party leave to amend."); *DCD Programs*, 833 F.2d at 186 ("[D]elay, by itself, is insufficient to justify denial of leave to amend.").

Here, Plaintiff seeks to add a claim in his proposed SAC against Defendants Gates and CDCR arising from alleged unconstitutional medical care in 2014—eight years prior to both the filing of this action as well as the other allegations in Plaintiff's proposed SAC.

---

[6] The Court notes some, but not all, of the allegations Plaintiff seeks to add in his proposed SAC involve events that occurred after Plaintiff filed his FAC, ECF No. 9. To the extent Plaintiff seeks to supplement his pleading under Rule 15(d), the legal standard is the same as a motion to amending a pleading under Rule 15(a). *See Cathy v. Palma*, No. 22-cv-1565, 2023 WL 3213857, at *2 (S.D. Cal. May 2, 2023) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In deciding whether to grant leave to amend pursuant to Fed. R. Civ. P. 15(a) or to supplement his original pleading pursuant to Fed. R. Civ. P. 15(d), courts consider the *Foman* factors: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment."); *see also Lyon v. ICE*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) ("The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as for amending one under 15(a).").

[ECF No. 30-1 ¶ 4.] As Defendants correctly point out, Plaintiff knew of this incident when he filed his initial Complaint in 2022, yet he did not include any allegations related to the 2014 incident in his Complaint. [ECF No. 32 at 3; *see* ECF No. 1.] Nor did Plaintiff include any allegations regarding the 2014 incident in his FAC filed on May 18, 2023. [ECF No. 9.] Perhaps most significantly, Plaintiff does not explain his delay. Accordingly, the Court finds the undue delay factor supports denying Plaintiff leave to add claims against Defendants Gates and CDCR[7] arising from alleged medical care in 2014.

## 2.   Futility of Amendment

Rule 18(a) provides a party "may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Rule 20 governs permissive joinder of parties and permits several persons to be joined as defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[]" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). Taken together, Rule 18 permits a plaintiff to join claims arising from separate incidents, even if unrelated, if those claims are asserted against the same defendant, and Rule 20 permits joinder of multiple defendants in a single action if a right to relief against them arises out of the "same transaction, occurrence, or series of transactions or occurrences" and presents a common question of law or fact. *Harrell v. Bd. of Trustees of California State Univ.*, 710 F. Supp. 3d 742, 747 (N.D. Cal. 2024) (citing Fed. R. Civ. P. 20(a)(2)). "[T]he same transaction or occurrence requirement 'refers to similarity in the factual background of a claim.'" *Fid. Nat. Title Co. v. U.S. Small Bus. Admin.*, No. 13-cv-2030, 2014 WL 1883939, at *8 (E.D. Cal. May 12, 2014) (quoting

---

[7] Though Defendants raise this argument with respect to Defendant Gates only, the Court finds this rationale applies equally to Defendant CDCR.

*Coughlin*, 130 F.3d at 1350). "Claims that 'arise out of a systematic pattern of events' and 'have [a] very definite logical relationship' arise from the same transaction or occurrence." *Soares v. Paramo*, No. 13-cv-2971, 2016 WL 3022040, at *4 (S.D. Cal. May 25, 2016) (quoting *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 842–43 (9th Cir. 2000) (internal quotations omitted)).

Rule 20, like Rule 15(a)(2), requires liberal construction to promote judicial economy and trial convenience. *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 558 F.2d 914, 917 (9th Cir. 1977) (citation omitted). "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966)); *see also League to Save Lake Tahoe*, 558 F.2d at 917. However, as the Court previously recognized, "[u]nrelated claims against different defendants belong in different suits." [ECF No. 23 at 2–3 (quoting *Jones v. Placer Cty. Sheriff's Off.*, No. 19-cv-0342, 2020 WL 1472426, at *2 (E.D. Cal. Mar. 26, 2020).]

Here, Defendants contend Plaintiff's proposed SAC fails to comply with Rules 18 and 20 because it "includes a variety of unrelated claims against different Defendants"— specifically, the claim against Defendant Gates concerning 2014 events is unrelated to the claims against Defendants Sanchez, Huss, and Barletto involving allegations in 2023 and 2024. [ECF No. 32 at 4.] Defendants further argue Plaintiff's proposed SAC fails to satisfy Rule 20(a)(2)(A) because not "all Defendants participated in the same transaction or series of transactions" and no question of fact exists common to Defendants. [ECF No. 32 at 5.] In its Order granting the motion to sever, the Court previously found Plaintiff failed to satisfy the "same transaction" showing, as neither of the counts alleged in the FAC were "based on the same precipitating event." [ECF No. 23 at 3–4.] In his current motion, Plaintiff alleges new factual allegations in Counts 1 and 3 and contends his proposed SAC is based on a "series of transactions and occurrences based on factual background" in which

Defendant Beltran, the senior psychologist supervising Plaintiff's enhanced outpatient treatment for PTSD, ignored Plaintiff's reports of suicidal thoughts and acts of self-harm, cleared Plaintiff to return to situations where Plaintiff had unrestricted access to sharp objects to self-mutilate, and further ordered his subordinates to do the same. [ECF Nos. 30 at 2, 30-1 ¶¶ 8, 15.] Plaintiff brings claims against Defendant Beltran for deliberate indifference to Plaintiff's serious psychiatric medical needs in all three Counts of the proposed SAC, which comports with Rule 18(a). Plaintiff brings the same cause of action for deliberate indifference to his psychiatric medical needs against Defendants Sanchez, Huss, and Barletto also based on his theory that Defendant Beltran controlled Plaintiff's care by ordering his subordinates to ignore Plaintiff's reported urges to self-harm and to clear Plaintiff to return to his cell despite access to sharp objects. Construing Plaintiff's allegations liberally as the Court must for a pro se plaintiff, *Lopez*, 203 F.3d at 1131, the Court finds Plaintiff sufficiently alleges a series of transactions or occurrences and a common question of law or fact as to Defendants Sanchez, Huss, and Barletto for purposes of permissive joinder under Rule 20(a)(2). *See* Fed. R. Civ. P. 20(a)(2); *Coughlin*, 130 F.3d at 1351.

However, even construing Plaintiff's allegations liberally, Plaintiff's proposed SAC fails Rule 20's standard for permissive joinder of Defendant Gates. *See Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) ("A liberal construction of a pro se complaint, however, does not mean that the court will supply essential elements of a claim that are absent from the complaint."). Plaintiff's only allegations in the proposed SAC involving Defendant Gates are that the CDCR, and Defendant Gates as Chief, in 2014 permitted prisoner employee subordinates to diagnosis PTSD and prescribe medications "to prisoners like Plaintiff" but did not offer treatment outside of medication for PTSD specific symptoms. [ECF No. 30-1 ¶¶ 3–4.] Plaintiff does not allege any connection between Defendants Beltran and Gates; nor does he allege Defendant Gates treated Plaintiff directly in 2014 or cleared Plaintiff to return to his cell despite reports of self harm and access to sharp objects, either on his own or at Defendant Beltran's directive. Thus, Plaintiff's claim

against Defendant Gates does not arise out of the same series of transactions or occurrences, and "the mere fact that all [the plaintiff's] claims arise under the same general law does not necessarily establish a common question of law or fact" for purposes of Rule 20. *See Coughlin*, 130 F.3d at 1351. The Court finds Defendant Gates is misjoined under Rule 20; thus, Plaintiff's motion should be denied as to the claim against Defendant Gates based on futility of amendment.

For the foregoing reasons, the Courts **RECOMMENDS** the following:

1.  Plaintiff's motion for leave to file a Second Amended Complaint be **GRANTED IN PART and DENIED IN PART**.

    a.  The Court finds amendment would not be futile based on improper joinder of Plaintiff's claims against Defendants Sanchez, Huss, and Barletto and therefore **RECOMMENDS** Plaintiff's motion be **GRANTED** as to Plaintiff's proposed amendments as to these Defendants in Count 3.

    b.  However, the Court **RECOMMENDS** Plaintiff's motion to amend be **DENIED** as to the 2014 incident involving Defendants Gates and CDCR based on both undue delay and futility of amendment.

2.  Based on the undersigned's recommendation to grant in part the motion, the Court further **RECOMMENDS** Plaintiff's Second Amended Complaint, ECF No. 30-1, be **DEEMED FILED with paragraphs 3–7 STRICKEN**.

## III.   SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

As the Court recognized in its previous screening orders, ECF Nos. 6, 22, Plaintiff is proceeding in forma pauperis; the Court may dismiss his case "at any time" if it "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii); *Lopez*, 203 F.3d at 1126–27. In light of the Court's recommendation to grant in part Plaintiff's motion to file the SAC and deem the proposed SAC filed, and because the SAC supersedes the operative complaint, the Court once again finds it appropriate to conduct another "early judicial

screening" to make clear which claims require a response. *See Jones v. Bock*, 549 U.S. 199, 223 (2007).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). But "[a]ll or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact." *Hill v. Lundgren*, No. 21-cv-01361, 2021 WL 6622255, at *1 (D. Nev. Dec. 29, 2021).

### A.   Deliberate Indifference

Plaintiff alleges Eight Amendment violations of "deliberate indifference to serious psychiatric medical care due to discrimination" in all three Counts of his SAC. [ECF No. 30-1.] Plaintiff's primary contentions are Defendants failed to provide him adequate medical care by ignoring his propensity to and reports of self-harm and his suicidal ideations, which resulted in multiple incidents of self-inflicted lacerations. [*Id.*]

"In the Ninth Circuit, the test for deliberate indifference consists of two parts." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see Williams v. Navarro*, No. 18-cv-1581, 2022 WL 395968, at *3 (S.D. Cal. Feb. 9, 2022), *report and recommendation adopted*, No. 18-cv-1581, 2022 WL 910215 (S.D. Cal. Mar. 29, 2022), *appeal dismissed*, No. 22-55426, 2022 WL 16548070 (9th Cir. Aug. 19, 2022) ("A cause of action for deliberate indifference to a prisoner's serious illness or injury requires proof of both an objective and a subjective component."). "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 493 F.3d at 1096 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). As the Court recognized in its prior order, "[a] heightened suicide risk or an attempted suicide is a serious medical need." [ECF No. 6 at 7 (quoting

*Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010), *vacated*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011) (citing *Farmer*, 511 U.S. at 837)).] Accordingly, the objective component is satisfied.

Second, the plaintiff must demonstrate the defendant's response to the need was "deliberately indifferent" which requires both "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To "show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019).

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.     Analysis**

The Court addresses whether Plaintiff sufficiently alleges a claim against each new defendant to survive screening.

1.     Defendant Gates[8]

As discussed above, Plaintiff alleges in 2014, Defendant Gates, as Chief, permitted prison employees to diagnosis PTSD and prescribe medications "to prisoners like Plaintiff" but did not allow them to provide treatment outside of medication. [ECF No. 30-1 ¶ 3.] Plaintiff does not allege Defendant Gates treated Plaintiff in 2014; nor does he allege Defendant Gates knew of or disregarded Plaintiff's serious psychiatric medical needs. As such, Plaintiff's allegations against Defendant Gates are insufficient to state a plausible claim for deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to [the plaintiff's] serious medical needs."); *Norvell v. Roberts*, No. 20-cv-0512, 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (recognizing "differences of opinion over what medical treatment or course of care is proper" is insufficient to constitute an Eighth Amendment violation); *Williams*, 2022 WL 395968, at *3 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Additionally, to the extent Plaintiff alleges supervisory liability, his allegations fail to allege an independent constitutional violation against Defendant Gates. *See Iqbal*, 556

---

[8] As set forth above, the Court recommends Plaintiff be denied leave to amend to bring claims against Defendant Gates. However, because the Court also recommends the SAC be deemed filed, the Court proceeds to address Plaintiff's allegations as to Defendant Gates for purposes of this Report and Recommendation.

In addition, though the statute of limitations likely bars Plaintiff's claims arising from 2014, the Court addresses the merits and finds Plaintiff fails to state a claim against Defendants Gates and CDCR. *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (recognizing two-year California's statute of limitation for personal injury applies to a § 1983 claim).

U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *see Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989) (recognizing no vicarious liability of supervisor for personnel at a department of corrections).

### 2.   Defendant CDCR

Plaintiff mentions Defendant CDCR briefly in Count 1, in tandem with Defendant Gates, and then briefly in Count 3. [ECF No. 30-1 ¶¶ 3–4, 23.] Like Defendant Gates, Plaintiff alleges in Count 1 that in 2014, the CDCR permitted prison employees to diagnosis PTSD and prescribe medications without allowing treatment outside of medication. [ECF No. 30-1 ¶ 4.] In Count 3, Plaintiff alleges the CDCR ignored a recommendation for Plaintiff to participate in "living with PTSD" treatment and groups. [*Id.* ¶ 23.] Plaintiff brings these claims against Defendant CDCR in both its individual and official capacity. [*Id.* at 2.] However, as "the CDCR is not an individual," Plaintiff cannot bring a claim against it individually. *Lopez v. California Dep't of Corr. & Rehab.*, No. 13-cv-00238, 2013 WL 5675518, at *4 (C.D. Cal. Oct. 15, 2013).

Plaintiff also sues the CDCR in its official capacity. As a state agency, the CDCR is immune from actions for money damages and retrospective declaratory relief brought under § 1983 under the Eleventh Amendment. *See Brown v. California Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (citing *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir.1999)); *Morgan v. California Dep't of Corr. & Rehab.*, 362 F. App'x 730 (9th Cir. 2010) ("The district court properly dismissed Morgan's section 1983 claims because CDCR is immune from suit under the Eleventh Amendment."); *Ashford v. Hill*, No. 22-cv-00846, 2023 WL 5105827, at *2 (C.D. Cal. June 7, 2023), *report and recommendation adopted,* No. 22-cv-00846, 2023 WL 4824916 (C.D. Cal. July 27, 2023) (citing *Lund v. Cowan*, 5 F.4th 964, 969 (9th Cir. 2021)). Here, Plaintiff does not specify which relief he seeks from the CDCR, but instead generally requests from all Defendants declaratory and injunctive relief, as well as "punitive, exemplary, prospective, compensatory, nominal, and

special damages." [ECF No. 30-1 at 18.] Plaintiff's claim against CDCR for monetary damages and retrospective declaratory relief are barred as a matter of law.

Moreover, the Court finds Plaintiff's claim in Count 1 against Defendant CDCR arising from 2014 fails to state a claim for the same reasons discussed in section III.B.2.1 regarding Defendant Gates. Further, Defendant CDCR is only briefly mentioned in Count 3 as failing to adopt a recommendation for Plaintiff to participate in a "living with PTSD" treatment and group program. At most, Plaintiff alleges a difference of opinion regarding his treatment for PTSD, which is insufficient to state a claim for deliberate indifference in violation of the Eighth Amendment. *See Sanchez*, 891 F.2d at 242. Accordingly, in addition to recommending Plaintiff be denied leave to amend to add claims against Defendant CDCR, even assuming the truth of Plaintiff's allegations, the Court finds Plaintiff's SAC fails to state a claim against CDCR.

### 3.    Defendant Sanchez

Plaintiff alleges on April 8, 2023, he told Defendant Sanchez he had thoughts to self-mutilate, and Defendant Sanchez laughed in response and said, "unless you say the magic[,] word I can't help you." [ECF No. 30-1 at ¶ 18.] Plaintiff then self-harmed when he returned to his cell. [*Id.*] Plaintiff's allegations regarding this April 8, 2023 incident, if presumed true, are sufficient to state a plausible claim against Defendant Sanchez for deliberate indifference to Plaintiff's serious medical needs.

Plaintiff alleges there were several more incidents between April 8, 2023 and May 23, 2023 in which he reported self-inflicted lacerations to Defendant Sanchez, who responded by providing Plaintiff gauzes, pads, and "other medical supplies" and instructed him to treat himself in his cell. [*Id.* ¶ 19.] These allegations, however, are not sufficient for a claim of deliberate indifference, as Plaintiff reported existing lacerations to Defendant Sanchez who responded by providing medical aid. Thus, even construing Plaintiff's allegations liberally, he does not allege Defendant Sanchez disregarded an excessive risk or failed to act; instead, Plaintiff appears to allege the medical response to his self-inflicted lacerations was inadequate. "Inadvertent failures to provide adequate medical care, mere

negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell*, 2020 WL 4464454, at *4 (citing *Estelle v. Gamble*, 429 U.S. 97, 105–07 (1976) and collecting other cases). Further, Plaintiff does not allege he suffered any harm from Defendant Sanchez's response. *See Jett*, 439 F.3d at 1096 (recognizing the plaintiff must show both "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."). Thus, these latter allegations involving Defendant Sanchez are insufficient to state a claim for deliberate indifference.

### 4.   Defendant Huss

Defendant Huss is briefly mentioned in Count 3. [*Id.* ¶ 25.] Plaintiff alleges on March 2, 2024, he self-mutilated his left arm, and "while in TTA-medical under wound care," Defendant Huss responded by issuing Plaintiff a "Restrictive Housing Unit (RHU) Administrative Segregation (Ad-Seg) lock up order" for the night and also informed Plaintiff a doctor would clear him the next morning. [*Id.*] Plaintiff does not allege Defendant Huss disregarded an excessive risk to his health or safety. To the contrary, Plaintiff acknowledges he was receiving "wound care" for his existing laceration when Defendant Huss responded by issuing him a lock up order in RHU Ad-Seg. [*Id.*] Further, Plaintiff does not allege he suffered any harm from being moved to RHU Ad-Seg. *See Jett*, 439 F.3d at 1096. Thus, Plaintiff fails to a claim a plausible claim for deliberate indifference against Defendant Huss.

### 5.   Defendant Barletto

In Count 3, Plaintiff alleges while he was in RHU Ad Seg, Defendant Barletto came to Plaintiff's door and inquired about his mental state on two separate occasions. [*Id.* ¶ 26.] On March 3, 2024, Plaintiff told Barletto of his "thoughts and urge to cut," and Plaintiff remained in RHU Ad Seg that night. When Defendant Barletto returned the following morning, Plaintiff reiterated his urge to cut himself to which Defendant Barletto responded, "I can't hold your hand or put you in a rubber room." [*Id.*] Plaintiff was later taken back to

his cell where he had access to sharp objects and engaged in self-mutilation on four subsequently occasions in March 2024. [*Id.* ¶ 27.] These allegations, if presumed true, are "sufficient to warrant ordering [Defendant] to file an answer." *Wilhelm v. Rotman,* 680 F.3d 1113, 1116 (9th Cir. 2012).

### 6. Defendant Beltran

As discussed above, the Court previously summarized Plaintiff's allegation against Defendant Beltran in the prior complaints and permitted Plaintiff to continue to prosecute Count 2 from his FAC. [ECF Nos. 6, 22, 23.] As Plaintiff reiterates the same allegations against Defendant Beltran in Count 2 of his SAC, the Court finds Plaintiff's allegations in Count 2 are sufficient to state a plausible claim against Defendant Beltran. Thus, the Court focuses its analysis on Plaintiff's new allegations against Defendant Beltran in the SAC.

In Count 1, Plaintiff alleges Defendant Beltran approved Plaintiff's return to his cell that contained sharp objects, following a self-mutilation incident in a classroom, which Plaintiff had explained to Defendant Beltran to be a trigger setting for self-harm. [ECF No. 30-1 ¶10.] Plaintiff alleges despite Defendant Beltran's knowledge about settings which increase his likelihood of self-harm, Defendant Beltran still cleared him to return to his cell where he had access to sharp objects. [*Id.*] Therefore, as plead, Plaintiff plausibly states a cause of action for deliberate indifference in Count 1.

In Count 3, Plaintiff alleges on four separate occasions in March 2024, Defendant Beltran cleared Plaintiff to return to his cell following a self-mutilation incident without removing the object used to inflict the laceration, and Plaintiff self-harmed. [*Id.* ¶ 27.] Taken as true, Plaintiff sufficiently alleges a claim against Defendant Beltran for deliberate indifference in Count 3 to survive screening.

### 7. Defendants Moreno and Boyd

The Court previously found Plaintiff plausibly stated an Eighth Amendment claim for relief based his allegations in Count 2 of FAC involving Defendants Moreno and Boyd. [ECF Nos. 6, 22.] In the SAC, Defendants Moreno and Boyd are only mentioned in Count 2, which is virtually identical to his allegations in Count 2 of the FAC. Plaintiff's re-alleged

claims involving Defendants Moreno and Boyd likewise continue to plausibly state Eighth Amendment claims for relief if presumed true, and therefore remain "sufficient to warrant ordering [those Defendants] to file an answer." [ECF No. 6 at 7–8; ECF No. 22 at 2, citing *Wilhelm*, 680 F.3d at 1116.]

## IV.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

An "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Where a plaintiff's second amended complaint supersedes the first amended complaint, both the original complaint and the first amended complaint have "ceased to exist" and "no longer perform[] any function." *Id.* (citation omitted). Further, where a pending motion targets a complaint that is no longer in effect, the motion becomes moot. *Id.*

Here, Defendants Beltran, Boyd, and Moreno have moved for summary judgment of claims asserted in Plaintiff's FAC. [ECF No. 43.] In light of the undersigned's recommendations above to grant in part Plaintiff's motion and deem the SAC filed, the Court finds Defendants' motion for summary judgment is moot. *See Ramirez*, 806 F.3d at 1008; *Lambert v. Huertas*, No. 19-cv-5980, 2021 WL 1221467, at *1 (W.D. Wash. Mar. 1, 2021), *report and recommendation adopted*, No. 19-cv-05980, 2021 WL 1172046 (W.D. Wash. Mar. 29, 2021) (finding moot the defendants' motions for summary judgment to the first amended complaint where the court directed the plaintiff to file a complete second amended complaint); *Nelson v. City of Los Angeles*, No. 11-cv-5407, 2015 WL 1931714, at *22 (C.D. Cal. Apr. 28, 2015) ("Plaintiffs will be permitted to file a second amended complaint amending their claims against certain City and County Defendants, and the summary-judgment motions therefore should be denied without prejudice to their reassertion based on the amended complaint."); *Farkas v. Gedney*, 2014 WL 5782788 (D. Nev. Nov. 6, 2014) ("[B]ecause granting [the plaintiff's] motion for leave to amend will alter the scope of defendants' now-filed motion for summary judgment, defendants' motion for summary judgment is denied without prejudice, subject to re-filing based on the scope of the soon-to-be amended complaint."). Accordingly, the undersigned **RECOMMENDS**

Defendants' motion for summary judgment be denied without prejudice subject to refiling as appropriate based on the operative pleading.

## V.  CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Andrew G. Schopler under 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3 of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** the District Judge issue an Order:

1.  **APPROVING** and **ADOPTING** this Report and Recommendation.

2.  **GRANTING IN PART and DENYING IN PART** Plaintiff's motion for leave to file a Second Amended Complaint [ECF No. 30] as follows:

    a.  Plaintiff's motion be **GRANTED** as to Plaintiff's proposed amendments related to Defendants Sanchez, Huss, and Barletto; and

    b.  Plaintiff's motion be **DENIED** as to Defendants Gates and CDCR.

3.  **ORDERING** Plaintiff's Second Amended Complaint, ECF No. 30-1, be **DEEMED FILED with paragraphs 3–7 STRICKEN**.

4.  **DISMISSING** all claims alleged in the Second Amended Complaint against Defendants CDCR, Gates, and Huss based on Plaintiff's failure to state a plausible claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B) and **DIRECTING** the Clerk of the Court to terminate Defendants CDCR, Gates, and Huss as parties to this action.

5.  **DIRECTING** the Clerk to issue a summons as to Plaintiff's Second Amended Complaint upon Defendants Sanchez and Barletto and forward it to Plaintiff along with two (2) blank U.S. Marshal Form 285s. In addition, the Clerk will provide Plaintiff with a copy of this Order, a certified copy of his Second Amended Complaint, and the summons so he may serve these Defendants. Upon receipt of this "IFP Package," Plaintiff must complete each U.S. Marshal Form 285 as completely and accurately as possible, include an address where each of these Defendants may be served, *see* S.D. Cal. Civ.

L.R. 4.1.c, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

6. **ORDERING**, within **<u>fifteen (15) days of receipt</u>** of the U.S. Marshal Form 285s, the U.S. Marshal to serve a copy of Plaintiff's Second Amended Complaint and summons upon Defendants Sanchez and Barletto at the addresses provided by Plaintiff on each USM Form 285 provided, and to file executed waivers of personal service upon Defendants Sanchez and Barletto with the Clerk of Court as soon as possible after their return. Should Defendants Sanchez and Barletto fail to return the U.S. Marshal's request for waiver of personal service within 30 days, the U.S. Marshal must instead file the completed, but unexecuted Form USM 285 Process Receipt and Return with the Clerk of Court, include the date the summons, Second Amended Complaint, and request for waiver was mailed, and indicate why service upon that Defendant was not completed. All costs of service will be advanced by the United States; however, if Defendants Sanchez and Barletto are located within the United States, and fail without good cause to sign and return the waiver requested by the Marshal on Plaintiff's behalf, the Court will impose upon Defendants any expenses later incurred in making personal service. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

7. **ORDERING** Defendants Sanchez and Barletto once served, to reply to Plaintiff's Second Amended Complaint, and any subsequent pleading Plaintiff may file in this matter in which they are named as Defendants, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2).

8. **ORDERING** Plaintiff, after service has been made by the U.S. Marshal, to serve upon Defendants Sanchez and Barletto, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration

pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court a certificate stating the manner in which a true and correct copy of that document was served on Defendants Sanchez and Barletto, or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon Defendants once they have been served, may be disregarded.

9.   **REQUIRING** Defendants Beltran, Boyd, and Moreno to respond to Plaintiff's Second Amended Complaint within fourteen (14) days of an Order on this Recommendation.

10.   **DENYING WITHOUT PREJUDICE** Defendants' motion for summary judgment. [ECF No. 43.]

**IT IS HEREBY ORDERED** any party to this action may file written objections with the Court and serve a copy on all parties no later than **October 30, 2024**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than **fourteen (14) days** after being served with written objections.

**IT IS SO ORDERED**.

Dated:  October 16, 2024

HON. MICHELLE M. PETTIT
United States Magistrate Judge